**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RONNIE GULLY, JR.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LATOYA HUGHES,**<br>**ANTHONY D. WILLS,**<br>**LT. DALLAS,**<br>**LT. CHITTY,**<br>**SARGENT DAVIS,**<br>**LT. CARRON,**<br>**DR. SIDIQUI,**<br>**LT. PHOENIX,**<br>**C/O CUNNINGHAM,**<br>**JOLENE KLUMP,**<br>**MAJOR LEE,**<br>**SARGENT HARRIS,**<br>**NURSE CHITTY,**<br>**C/O L, and**<br>**NURSE KIMFORD,**<br><br>**Defendants.** | **Case No. 25-cv-01948-SPM** |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ronnie Gully, Jr., an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center (Menard), brings this civil action pursuant to 42 U.S.C. §1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations

of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE FIRST AMENDED COMPLAINT

Plaintiff alleges the following: On August 18, 2024, Plaintiff injured his left forearm and bicep doing arm curls in his cell. (Doc. 13, p. 5). At the time, Plaintiff was housed in East Cellhouse, which is designated as a "high aggression" housing unit. (*Id.*). Plaintiff saw his "muscle pop like a rubber band and [begin] to separate from [his] forearm and roll up in [his] arm." (*Id.*). He instantly was in immense pain, and he screamed for help. (*Id.*). Plaintiff was taken to the upstairs medical office and treated by Nurse Kimberly. (*Id.*). Nurse Kimberly made a phone call and was instructed to send Plaintiff to the medical department for treatment. (*Id.*). Once at the medical department, Plaintiff was placed in a holding cell and waited three and half hours to be examined by Dr. Sidiqui. (*Id.*). Upon examination, Plaintiff was taken to Carbondale Memorial Hospital for treatment. (*Id.*). Plaintiff's arm was placed in a cast and sling, and he was prescribed tramadol three times a day. (*Id.*). When he returned to Menard, he was housed in the healthcare unit. (*Id.*).

Plaintiff had follow-up appointments with Dr. Sidiqui at Menard, and Dr. Sidiqui referred Plaintiff for further imaging and an MRI at offsite locations. (Doc. 13, p. 5). These appointments, however, were repeatedly canceled. (*Id.*). Dr. Sidiqui showed Plaintiff that his name was listed and highlighted on the medical furlough sheet, confirming that Dr. Sidiqui had requested the appointments. (*Id.*). Dr. Sidiqui told Plaintiff that "he'd sing like a canary bird in court due to security…precluding him from doing his jobly duties to render [Plaintiff] the care [Plaintiff] needed." (*Id.*).

Plaintiff filed a formal complaint against Major Lee, the shift command, for deliberately

derailing his transportation to the MRI appointment. (Doc. 13, p. 5). In retaliation for filing the complaint, Plaintiff was transferred from the healthcare unit and placed in the North Lowers, which is overflow housing for the healthcare unit. (*Id.* at p. 5, 10).

The five-day officer at the time in the North Lowers was Correctional Officer L. (Doc. 13, p. 5). Correctional Officer L constantly denied Plaintiff ice, showers, cleaning supplies, and yard. (*Id.*). Sergeant Davis harassed Plaintiff because Plaintiff filed grievances by searching and ransacking Plaintiff's cell over seven times. (*Id.* at p. 6). During the searches, various legal correspondences were confiscated, and his kufi, hadith, and Quran were thrown onto the floor. (*Id.*). When Plaintiff asked Davis why Davis was repeatedly searching his cell, Davis responded, "Per Rule book we have the authority to search your cell at any time but since you ask[ed] grievances." (*Id.*). Davis also would place handcuffs on Plaintiff with Plaintiff's hands positioned behind his back and force Plaintiff to walk without a cane, despite Plaintiff's medical permits designating that Plaintiff should be handcuffed with his hands in front of his body and that Plaintiff is allowed to walk with the assistance of a cane. (*Id.*). This action caused Plaintiff excruciating pain. (*Id.*). Plaintiff asked Lieutenant Carron "to override [Davis's] outlandish lunatic measures as [Davis's] superior," and Plaintiff showed Carron his medical permits. (*Id.*). Carron told Plaintiff that he "rides" with his staff whether they are right or wrong. (*Id.*). Plaintiff became fed up with the harassment and filed a detailed grievance, which ended up going missing. (*Id.* at p. 6).

On or around September 8, 2024, Plaintiff fell in the shower breaking his cast because the shower area is not properly equipped to assist inmates with mobility issues. (Doc. 13, p. 6). After falling, Plaintiff was escorted to the healthcare unit by Sergeant Davis and Lieutenant Carron. (*Id.* at p. 7). Once in the healthcare unit, Plaintiff was handcuffed to a seat, and Davis and Carron punched and "kneed" Plaintiff. (*Id.*). After assaulting Plaintiff for about twenty seconds, Sergeant

Harris told the officers, "I think he's had enough." (*Id.*). Harris asked Plaintiff, "We straight?" (*Id.*). Plaintiff then waited for two hours in the healthcare unit. (*Id.*). He was eventually taken to Carbondale Memorial Hospital to have his arm reset in a new cast. (*Id.*).

Upon his return to Menard, Plaintiff was housed in the healthcare unit. (Doc. 13, p. 7). Plaintiff continued to file grievances about canceled medical furloughs for his MRI and the misconduct of Davis, Lee, and Harris. (*Id.*). He also notified Lieutenant Dallas in Internal Affairs on October 20, 2024, about the ongoing harassment and sought a "keep separate from" order so that he would no longer have contact with the offending officers. (*Id.* at p. 8). On October 24, 2024, Plaintiff was transferred from the healthcare unit back to the North Lowers. (*Id.* at p. 7-8).

That same day, on October 24, Plaintiff received an MRI. (Doc. 13, p. 8). October 28, 2024, he had an appointment at SLU orthopedics, and his cast was removed. (*Id.*). The doctor treating Plaintiff at SLU orthopedics recommended surgery. (*Id.*). The doctor asked Plaintiff's escorting officers, Phoenix and Cunningham, for the MRI results, but they had forgotten to bring them. (*Id.*). Because the results were left at Menard, more imaging was ordered, and Plaintiff's recommended surgery was delayed. (*Id.*).

On October 31, 2024, because security staff claimed Plaintiff was aggressive, he was moved out of the North Lowers and back to East Cellhouse. (Doc. 13, p. 9). Typically, inmates with canes and wheelchairs are housed in the healthcare unit or the North Lowers, but Plaintiff was singled out and transferred to East Cellhouse without consideration of his physical condition. (*Id.*).

Based on the allegations and Plaintiff's articulation of his claims in the First Amended Complaint, the Court designates the following counts:

**Count 1:** Eighth Amendment claim against Hughes, Wills, Klump, Lee, Sidiqui, Dallas, Phoenix, Cunningham, and Nurse Chitty for delay

and/or denial of constitutionally adequate medical care for Plaintiff's arm injury and associated pain.

**Count 2:** Eighth Amendment claim against Ms. L for subjecting Plaintiff to unconstitutional conditions of confinement in the North Lowers.

**Count 3:** Eighth Amendment excessive force and/or failure to intervene claim against Davis and Carron for repeatedly restraining Plaintiff with his hands behind his back.

**Count 4:** Eighth Amendment excessive force and/or failure to intervene claim Davis, Carron, and Harris for physically assaulting Plaintiff in the healthcare unit on or around September 8, 2024.

**Count 5:** First Amendment retaliation claim against Carron, Davis, Harris, Lee, and Dallas.

**Count 6:** ADA/RA[1] claim against Lieutenant Chitty, Dallas, Klump, Wills, Davis, and Carron for failing to accommodate Plaintiff's mobility issues by housing him in East Cellhouse where he does not have access to a low gallery shower.

**Count 7:** Eighth Amendment claim against Lieutenant Chitty, Dallas, Klump, Wills, Davis, and Carron for exhibiting deliberate indifference to Plaintiff's knee and ankle injuries by housing him in East Cellhouse where he does not have access to a low gallery shower.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**[3]

[1] Plaintiff does not mention the Rehabilitation Act (RA), 29 U.S.C. § 794(a), in the First Amended Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a pro se prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has asserted a claim under the latter statute. *See Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

[3] This includes any claims Plaintiff intended to bring against Nurse Kimford. Nurse Kimford is listed as a defendant, but there are no allegations against this individual in the statement of claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

## Severance

Before addressing whether Plaintiff has sufficiently stated a claim, the Court will sever Counts 6 and 7 from this case. Plaintiff asserts that in addition to his arm injury, he has also at some point injured his ankle and knee, suffers from mobility issues, and he uses a cane. (Doc. 13, p. 6, 10). He claims that since his transfer to East Cellhouse on October 31, 2024, he is forced to take stairs in order to access the showers because there are no "low gallery showers" in East Cellhouse. (Doc. 13, p. 10). As a result, he has effectively been denied access to the showers. Plaintiff claims that he has "a bottom bunk/low gallery permit," and he wrote over five grievances requesting accommodation. (*Id.*). Based on these allegations, Plaintiff brings an Eighth Amendment cruel and unusual punishment claim against Lieutenant Chitty, Lieutenant Dallas, ADA Coordinator Klump, Warden Wills, Sergeant Davis, and Lieutenant Carron and a claim under the American with Disabilities Act (Counts 6 and 7).

The Court will not allow these two counts to proceed in this litigation, which is primarily about inadequate medical care for Plaintiff's bicep injury and the mistreatment and retaliation he suffered after he began to file grievances and complaining about his lack of care for the bicep injury. While Rule 18 of the Federal Rules of Civil Procedures permits a plaintiff to join "as many claims as it has against an opposing party," FED. R. CIV. P. 18(a), the Court still retains the authority to sever any claims that are "discrete and separate." *Gaffney v. Riverboat Servs. of Indiana, Inc.*, 451 F.3d 424, 442 (7th Cir. 2006). For the purpose of severance, "discrete and separate" means that "one claim must be capable of resolution despite the outcome of the other claim." *Id*. Here, Counts 6 and 7 are discrete and separate, and the Court finds it appropriate to sever these two claims into a separate lawsuit. Counts 1 through 5 will remain in this lawsuit and will be subject to Section 1915A review.

## Merits Review

### Count 1

To plead an Eighth Amendment deliberate indifference claim, a plaintiff must allege: (1) that he suffered from an objectively serious medical condition (objective standard); and (2) that the individual defendant was deliberately indifferent to that condition (subjective standard). *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if "'a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is a high bar. "Neither negligence nor even gross negligence is sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991)). Furthermore, when determining whether prison officials have been deliberately indifferent to an inmate's serious medical needs, courts should consider the totality of the received medical care. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000).

Plaintiff has failed to state a claim against Dr. Sidiqui. According to Plaintiff, after he was examined by Dr. Sidiqui following his initial injury on August 18, 2024, Dr. Sidiqui had him immediately treated at a hospital, scheduled him for follow-up visits, and referred him for an MRI. (Doc. 13, p. 5). Plaintiff does not attribute the delayed MRI or recommended surgery to any acts or omissions on the part of Dr. Sidiqui. Thus, as described, Dr. Sidiqui's conduct does not amount

to deliberate indifference, and Count 1 is dismissed as to Dr. Sidiqui.

Plaintiff has also failed to state a claim against Major Lee. Plaintiff asserts that Major Lee was the shift commander and was "deliberately derailing [his] transportation to [his] MRI." It is not clear what Plaintiff means by this statement. The First Amendment Complaint does not include any factual allegations describing Lee's conduct or explaining how Lee was involved in Plaintiff's medical care. Lee cannot be liable solely based on his position as a shift commander. *See e.g., Burks v. Raemisch*, 555 F.3d 592, 592, 595 (7th Cir. 2009) (officials cannot be held liable under Section 1983 solely based on their positions); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (prison officials generally are liable under Section 1983 only for their personal conduct, not the conduct of others or of those they supervise). Because Plaintiff's allegations against Lee are too vague for the Court to plausibly infer that Major Lee knew of a substantial risk of harm to Plaintiff and disregarded that risk, Count 1 is dismissed as to Lee.

Likewise, Count 1 is dismissed as to Lieutenant Dallas. Plaintiff asserts that Dallas, who has control over all security operations along with Major Lee and Warden Wills, stopped medical furloughs. (Doc. 13, p. 11). But he does not provide any facts to support the conclusion that Dallas acted with deliberate indifference to specifically Plaintiff's medical needs. Plaintiff did not discuss his treatment with Dallas until October 20, 2024, and four days later, he was sent for his MRI. There is no indication that Dallas had any involvement in Plaintiff's medical care after October 20. Thus, Plaintiff has not stated a claim against Dallas.

The Court also dismisses Count 1 against Lieutenant Phoenix and Correctional Officer Cunningham. Plaintiff asserts that when he had his appointment at SLU orthopedics, Phoenix and Cunningham forgot to bring a copy of his MRI imaging results, which resulted in delaying his surgery and prolonging his pain. (Doc. 13, p. 8). The act of forgetting Plaintiff's imaging results

on a single occasion, even after he reminded them, does not amount to a constitutional violation, as single instances of neglect are generally insufficient to support a claim of Eighth Amendment deliberate indifference. *See Owens v. Duncan*, 788 F. App'x 371, 374 (7th Cir. 2019) (a single interaction with staff at sick call did not amount to deliberate indifference); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) ("isolated instances of neglect … cannot support a finding of deliberate indifference"). Accordingly, Count 1 is dismissed against Phoenix and Cunningham.

Plaintiff has failed to state a claim against ADA Coordinator Jolene Klump. Plaintiff asserts that he had written grievances complaining that Menard does not meet ADA accessibility standards for those who need mobility assistance, and his grievances were ignored. (Doc. 13, p. 6). As a result, he fell in the shower. (*Id.*). Although not entirely clear, the Court construes Plaintiff's allegations as claiming that he was having difficulty showering in the North Lowers because of his casted arm. Regardless, the mishandling or denial of grievances does not state a claim under the Eighth Amendment against Klump. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007).

Additionally, given the chronology of events, the Court cannot plausibly infer that Klump was aware that Plaintiff was at serious risk of harm and disregarded that risk by failing to provide him with mobility assistance when he showered after he had injured his arm. According to the First Amended Complaint, Plaintiff injured his arm on August 18, 2024. (Doc. 13, p. 5). He was subsequently taken to the hospital, his arm was placed in a cast, and when he returned to Menard, he was housed in the healthcare unit. (*Id.*). It is not clear how long he remained in the healthcare unit, and on a date not specified, he was transferred out of the healthcare unit to the North Lowers,

which Plaintiff states is a housing wing that acts as an "overflow" for the healthcare unit and typically houses those who need mobility assistance. (*Id.* at p. 9). Plaintiff then fell in the shower on September 8, 2024. (*Id.* at p. 6-7). Thus, only three weeks passed between Plaintiff's initial injury, and his secondary fall. It is not clear when he alerted Klump that he needed additional mobility assistance when showering in the North Lowers through the grievance process and that she would have even had time to receive, review, and process the grievance prior to Plaintiff's fall. Therefore, Count 1 is dismissed against Klump for failing to "grant him relief" in the form of assistance showering after his initial bicep injury on August 18, 2024.

Plaintiff asserts that Director Hughes and Warden Wills were notified through grievances, by Plaintiff's family members, and online complaints that Plaintiff is being denied adequate medical care for his arm injury and pain, but they have failed to intervene. (Doc. 13, p. 9). Not only was Plaintiff's MRI repeatedly canceled, but it appears he still has not received recommended surgery, and his pain is not being appropriately addressed. At this preliminary stage, these facts are enough to state a claim of deliberate indifference. Count 1 will proceed against Hughes, and Wills.

As to Nurse Chitty, Plaintiff states that she was "provided nurse sick calls and told [him], 'We are tired of you you are a big baby and whimp. All you do is complain we will deal with you when we deal with you.'" (Doc. 13, p. 10). He asserts she was given over seventeen written requests seeking pain medication, but he was never "called." (*Id.*). To the extent Plaintiff is attempting to assert liability because Chitty was unprofessional and rude during her interaction with Plaintiff, his Eighth Amendment claim fails. Dissatisfaction with Chitty's bedside manner is not the basis for a federal lawsuit. *See Duckworth v. Ahmad*, 532 F.3d 675, 679–80 (7th Cir. 2008). To the extent Plaintiff is claiming that Nurse Chitty was aware he was experiencing severe pain

and failed to take any action to alleviate his pain or otherwise provide medical treatment, Count 1 will proceed.

**Count 2**

To establish a conditions of confinement claim, an inmate must establish (1) a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), *citing Farmer v. Brennan*, 511 U.S. 825, 824, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Conditions may be considered collectively when analyzing a conditions of confinement claim, and the duration of the allegedly harmful conditions is relevant to the existence of an Eighth Amendment violation. *Id.*

Plaintiff claims that Ms. L, who was the five-day officer in the North Lowers, constantly denied him ice, showers, cleaning supplies, and time in the yard. (Doc. 13, p. 5). This statement is not sufficient to assert an Eighth Amendment claim. Plaintiff has not established that he was exposed to a harm that was objectively serious. He does not give any timeline for how long and often he was denied ice, showers, cleaning supplies, and time in the yard – and each denial does not necessarily violate the constitution.[4] The conditions as described were not constitutionally deficient. Count 2 is dismissed.

[4] *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (restricting inmates to weekly showers does not violate the Constitution); *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) ("90-day period of no yard privileges as a sanction for misconduct does not inflict cruel and unusual punishment on an inmate in segregation"); *Smith v. Erickson*, 684 F. App'x 576, 578–79 (7th Cir. 2017) (collecting cases and recognizing the distinction between the denial of "recreation," which did not state a plausible constitutional violation, versus the denial of exercise in its entirely, which could); *Smith v. Dart*, 803 F.3d 304, 313 (7th Cir. 2015) (noting "there is a significant difference between a lack of outdoor recreation and an inability to exercise" while affirming dismissal of plaintiff's claim because he "not allege that his movements [were] restricted to the point that he is unable to exercise inside his cell"); *Gray*, 826 F.3d at 1005 (the lack of access to adequate cleaning supplies, on their own, [do not] describe an Eighth Amendment violation).

**Count 3**

Plaintiff asserts that Sergeant Davis repeatedly forced Plaintiff to wear his handcuffs with his hands behind his back for no penological reason, despite Plaintiff's front cuff permit, sling, and cane. (Doc. 13), p. 6). Lieutenant Carron was informed of this practice but did not take any action to prevent Davis from continuing to restrain Plaintiff in a manner that was causing him injury. Count 3 will proceed against Davis and Carron.

**Count 4**

Plaintiff's allegations that on or around September 8, 2024, Carron, Davis, and Harris were involved in physically assaulting him while he was restrained in the healthcare unit are sufficient for Count 4 to proceed. *See Sanchez v. City of Chicago*, 700 F.3d 919, 925–26 (7th Cir. 2012). ("[I]n a Section 1983 action alleging that police violated the plaintiff's Fourth Amendment rights by subjecting him to excessive force, a defendant police officer may be held to account both for his own use of excessive force on the plaintiff…as well as his failure to take reasonable steps to attempt to stop the use of excessive force used by his fellow officers.").

**Count 5**

Prison officials are prohibited from retaliating against inmates for exercising their First Amendment rights by filing lawsuits about their conditions of confinement. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). A plaintiff asserting a retaliation claim must allege that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter future First Amendment activity; and (3) his protected activity was "at least a motivating factor" in the defendant's decision to take retaliatory action against him. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Plaintiff attributes his continual mistreatment to retaliatory motives. He claims that security

staff undertook a coordinated "campaign of harassment" because he filed grievances complaining about his lack of medical care and staff misconduct. (Doc. 13, p. 5, 7, 8, 13). With the exception of Davis repeatedly searching his cell, Plaintiff supports this claim with only bare conclusory statements about conspiracy and retaliatory animus. As the Seventh Circuit has recognized, an inmate's claim "that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls short of stating a claim even under notice pleading." *Santiago v. Anderson*, 496 F. App'x 630, 633 (7th Cir. 2012). *See also Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient"). Nor has Plaintiff alleged facts plausibly pleading a conspiracy. *Bell Atlantic Corp.*, 550 U.S. at 557 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.") Thus, Count 5 is dismissed as to Dallas, Carron, Lee, and Harris.

Count 5 will proceed against Davis to the extent Plaintiff asserts Davis repeatedly search his cell and discarded and threw away property in retaliation for filing grievances. (Doc. 13, p. 6).

## Injunctive Relief

Because Plaintiff seeks injunctive relief (Doc. 13, p. 13), Warden Wills is a defendant in both his individual and official capacities. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (current warden proper defendant for injunctive relief since he is the official "who would be responsible for ensuring that any injunctive relief is carried out.").

## Disposition

**IT IS HEREBY ORDERED** that any claim against Nurse Kimford is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that **COUNTS 6** and **7** are **SEVERED** into a new case,

which shall be captioned: **RONNIE GULLY, JR., Plaintiff v. LIEUTENANT CHITTY, LIEUTENANT DALLAS, JOLENE KLUMP, ANTHONY WILLS, SERGEANT DAVIS, and LIEUTENANT CARRON, Defendants**.

The Clerk is **DIRECTED** to file the following documents in the severed case:

(1) The First Amended Complaint (Doc. 13) as the "Complaint;" and
(2) This Memorandum and Order Severing Case.

In the severed case, Plaintiff will have an opportunity to notify the Court of his intention to proceed with Counts 6 and 7. If he chooses to proceed, Plaintiff must prepay the filing fee *or* file a new motion for leave to proceed *in forma pauperis* by the deadline set by the Court. Plaintiff's failure to either prepay the full filing fee or file a timely IFP motion in the new case will result in dismissal of the case.

**The only claims remaining in this action are COUNTS 1, 2, 3, 4, and 5 against Hughes, Wills, Dallas, Davis, Carron, Sidiqui, Phoenix, Cunningham, Klump, Lee, Harris, Nurse Chitty, and Ms. L.**

**IT IS FURTHER ORDERED** that the First Amended Complaint survives preliminary review pursuant to Section 1915A. **COUNT 1** will proceed against Hughes, Wills, and Nurse Chitty and is **DISMISSED** as to Klump, Lee, Sidiqui, Dallas, Phoenix, and Cunningham. **COUNT 2** is **DISMISSED without prejudice**. **COUNT 3** will proceed against Davis and Carron. **COUNT 4** will proceed against Davis, Carron, and Harris. **COUNT 5** will proceed against Davis and is **DISMISSED** against Carron, Harris, Lee, and Dallas.

The Clerk is **DIRECTED** to terminate Klump, Lee, Sidiqui, Dallas, Phoenix, Cunningham, Ms. L, Lieutenant Chitty, and Kimford as parties on the docket.

The Clerk of Court shall prepare for Hughes, Wills, Nurse Chitty, Davis, Carron, and Harris the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and

(2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit addresses medical claims, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Local Rule 8.2(b), Defendants shall respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery

secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 10, 2026**

**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.